

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00200-CR

_____

DAVIN D. CRENSHAW A.K.A. DAVON D. CRENSHAW, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1474789D

Before Kerr, Pittman, and Birdwell, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

A jury convicted Appellant Davin D. Crenshaw, also known as Davon D. Crenshaw, of one count of continuous sexual abuse of a child, one count of aggravated sexual assault of a child, two counts of indecency with a child by contact, and one count of indecency with a child by exposure. The trial court found the habitual offender allegation true and sentenced Appellant to life imprisonment on the five counts, with the sentences to be served concurrently with each other and consecutively to the sentence he was already serving for another offense. In his sole point, Appellant contends that the trial court erred by overruling his hearsay objections and allowing the sexual assault nurse examiner (SANE) to testify about statements the complainant, Christie,[1] made to her. We affirm.

## BRIEF FACTS

Appellant began dating Christie's mother (Mother) in 2009 and moved in with Mother and her children in 2010. Christie was approximately nine years old when she met Appellant. He sexually abused her more than ten times over several months when she was ten years old. In October 2014, when Christie was thirteen years old, she told her doctor that a man in his thirties had tried to have sex with her. The doctor discussed the allegation with Mother, and Mother discussed it with Christie

[1]We use aliases to refer to the complainant and her mother to protect the complainant's anonymity. *See* Tex. R. App. P. 9.10(a); *Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *Wilson v. State*, 442 S.W.3d 779, 782 n.1 (Tex. App.—Fort Worth 2014, pet. ref'd).

2

before calling the police. Mother was already mad at Appellant at that time "for going back to jail." In November 2014, Christie told an Alliance for Children forensic interviewer that she had been sexually abused. More than a year later, in January 2016, when Christie was fourteen years old, she underwent a sexual assault nurse examination, which involved the taking of her medical history—including details of the sexual abuse; a full physical examination, including a vaginal and anal examination; and testing for sexually transmitted diseases and pregnancy. Appellant's trial occurred in June 2017, about a year and a half after Christie's examination by the SANE.

Regarding the sexual abuse, Christie testified that Appellant:

- Pulled her pants and his pants down when she was lying on his and Mother's bed and tried to penetrate her vaginally with his penis, hurting her;

- Rubbed her labia over her clothing with his hands when she was standing in the bathroom;

- Touched her chest and put his mouth on it;

- Put his mouth on her vaginal area under her clothes when she was standing up;

- Exposed his penis and made her touch it when they were in her bedroom;

- Touched her "butt";

- Masturbated in her bedroom often;

- Showed her pornography on several occasions in her bedroom as well as in Mother's bedroom; and

- Threatened to hurt Mother if Christie told anyone their "secret."

Christie testified that she did not remember whether Appellant had ever ejaculated when he was masturbating in front of her.

The SANE testified that (1) her practice is to make it clear to patients that they see her for diagnosis and treatment—"make sure that they know why they're there and what [they and the SANE] have to talk about" and (2) she made Christie aware that her appointment was for medical diagnosis and treatment. During her appointment with the SANE, Christie detailed Appellant's sexual abuse:

> He started when I was ten years old with, like, just talking and flirting and saying word stuff. Physical stuff started a little later. He touched me on my private part. It would happen when my mom was at work and he was watching us. He tried to kiss me, and he also put his mouth on my privates. He tried to put his private part in my private part, but I wouldn't let him. The last time he did that was the night before he went back to jail. He also made me watch him touch himself.

The SANE also testified that Christie told her that Appellant licked her genitals. The SANE further testified, "When asked if anything came out of his private part, [Christie told the SANE], 'Yes, it went on the floor.'"

Appellant timely objected to the SANE's testimony about what Christie had told her:

> Judge, I believe that the statement that's about to be offered is not germane to any sort of medical diagnosis that was made. This is, as the witness has testified, a later outcry, as we are in open testimony. The— the complainant has already seen a doctor. There's not any sort of acute injury. So, as such, I believe that these are hearsay statements that are not appropriate.

4

He also complained that the statement about him ejaculating was inconsistent with Christie's testimony that she did not remember whether he had ejaculated when he masturbated in her presence. The trial court admitted the SANE's testimony about the statements Christie made to her over Appellant's objections.

There are no details in the record regarding the type of examination, if any, Christie's doctor performed in the doctor's appointment in which Christie first mentioned sexual abuse.

## DISCUSSION

In his sole point, Appellant complains that all of Christie's statements that the SANE repeated for the jury were hearsay and were not made for diagnosis and treatment because the examination was "a later outcry," Christie had already seen her doctor, and there was no acute injury. He also specifically complains that Christie's statements identifying him and averring that he ejaculated on the floor were not germane to her diagnosis and treatment.

I.    **We Apply a Two-Part Test to Determine the Admissibility of a Child's Hearsay Statements to a SANE.**

Rule 803(4) of the Texas Rules of Evidence allows statements "made for— and . . . reasonably pertinent to—medical diagnosis or treatment" that "describe[] medical history; past or present symptoms or sensations; their inception; or their general cause" to be admitted into evidence even though they are hearsay. Tex. R. Evid. 803(4). For evidence to be admissible under this exception, the proponent must

5

show (1) that the declarant "was aware that the statements were made for purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended upon the veracity of the statements" and (2) "that the statements are pertinent to diagnosis or treatment, i.e., that it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant." *Lumsden v. State*, No. 02-16-00366-CR, 2018 WL 5832112, at *16 (Tex. App.—Fort Worth Nov. 8, 2018, pet. ref'd) (citing *Taylor v. State*, 268 S.W.3d 571, 588–89, 591 (Tex. Crim. App. 2008)).

In cases involving medical diagnosis and treatment—as opposed to mental health treatment and therapy—courts generally presume that "children of a sufficient age or apparent maturity" will understand that the medical provider's questions are designed to elicit accurate information and that veracity will serve their best interest. *Taylor*, 268 S.W.3d at 589. Thus, in applying the test, courts generally review the record for "evidence that would *negate* such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies." *Id.* Absent such negative evidence, the Texas Court of Criminal Appeals does "not require[] the proponent of statements to a SANE to affirmatively demonstrate that the declarant was aware of the purpose of the statements and the need for veracity." *Lumsden*, 2018 WL 5832112, at *16; *see Taylor*, 268 S.W.3d at 589.

## A.    Appellant Does Not Challenge the First Prong of the Test.

Appellant's challenge does not address the first prong of the test. In the interest of completeness, however, we reiterate that the SANE expressly told Christie

6

that the purpose of her examination was diagnosis and treatment. Further, although the SANE did not explicitly impress upon Christie that she needed to tell the truth in her physical examination, we are convinced by our review of the record that the then fourteen-year-old Christie was of sufficient age and maturity to realize that she needed to be truthful during the SANE examination. *See Lumsden*, 2018 WL 5832112, at *19; *Franklin v. State*, 459 S.W.3d 670, 677 (Tex. App.—Texarkana 2015, pet. ref'd) ("[C]ourts can infer from the record that [a child complainant] knew it was important to tell a [SANE] the truth in order to obtain medical treatment or diagnosis."); *Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd) ("[T]here is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply."). *But see Louisville v. State*, No. 02-16-00332-CR, 2018 WL 5668526, at *7–8 (Tex. App.—Fort Worth Nov. 1, 2018, pet. filed) (mem. op., not designated for publication) (holding SANE's testimony of a child complainant's statements inadmissible when evidence demonstrated the child complainant had a propensity to lie and did not demonstrate her awareness that her statements were for diagnosis and treatment or that proper diagnosis and treatment depended on her honesty). Christie's statements to the SANE therefore satisfy the first prong of the admissibility test.

### B. Appellant's Second-Prong Challenges Fail.

The basis of Appellant's sole point is that the challenged statements were not

pertinent to Christie's diagnosis and treatment. We disagree.

As to Appellant's contention that Christie's delayed outcry and absence of an acute injury (which the SANE defined as an injury that is at most 120 hours old) render the diagnosis-and-treatment hearsay exception inapplicable, this court has already rejected that notion. *See Wells v. State*, 558 S.W.3d 661, 664–65, 668 (Tex. App.—Fort Worth 2017, pet. ref'd) (upholding the admission of complainant's statements made to SANE more than four years after the offense); *see also Garzoria v. State*, No. 09-17-00019-CR, 2018 WL 4113919, at *2–3 (Tex. App.—Beaumont Aug. 29, 2018, pet. ref'd) (mem. op., not designated for publication) (upholding the admission of complainant's statements made to SANE several years after offense). The SANE here testified that she made it clear to nonacute patients, including Christie, that they were there for treatment and diagnosis, and they also "go over certain questions to make sure developmentally they're okay[ and] that emotionally they're ok."

If the record in this case indicated that at the time of Christie's October 2014 outcry to her doctor, the doctor took her medical history, performed a full physical examination including a vaginal and anal examination, and tested her for sexually transmitted diseases and pregnancy, our analysis and conclusion regarding the same type of examination by the SANE in 2016 would likely be different. However, we have no details of anything Christie's doctor did except to discuss Christie's allegation

8

with Mother. We are therefore compelled to follow our precedent regarding the admission of Christie's statements to the SANE about Appellant's sexual abuse.

As to Appellant's complaint that his identity is not pertinent to Christie's diagnosis and treatment, courts, including this one, have also rejected that contention. *See Estes v. State*, 487 S.W.3d 737, 756–57 (Tex. App.—Fort Worth 2016), *rev'd on other grounds*, 546 S.W.3d 691 (Tex. Crim. App. 2018); *Garzoria*, 2018 WL 4113919, at *3; *Beheler*, 3 S.W.3d at 189; *see also United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985) ("Statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment.").

Finally, as to Appellant's complaint that his ejaculating on the floor was not pertinent to Christie's treatment and diagnosis, the presence of ejaculate can be relevant to the risk of sexually transmitted diseases. *See Vela v. State*, No. 11-09-00210-CR, 2011 WL 1084795, at *1 (Tex. App.—Eastland Mar. 24, 2011, pet. ref'd) (mem. op., not designated for publication) ("Because the victim reported penetration and *ejaculation* by a male sexual organ, Dr. Sims tested the victim for sexually transmitted diseases that could have been asymptomatic for years . . . .") (emphasis added). Further, the trial court could have reasonably concluded that Christie's statement that Appellant ejaculated on the floor was pertinent "to the existence and degree of [Christie's] psychological and emotional injury." *Johnson v. State*, No. 08-10-

00094-CR, 2011 WL 3848985, at *6–7 (Tex. App.—El Paso Aug. 31, 2011, no pet.) (not designated for publication) (citing *Renville*, 779 F.2d at 437).

For all of these reasons, we hold that the trial court did not abuse its discretion by admitting into evidence the statements Christie made to the SANE. We overrule Appellant's sole point.

## <u>CONCLUSION</u>

Having overruled Appellant's only point, we affirm the trial court's judgments.

/s/ Mark T. Pittman

Mark T. Pittman
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 21, 2019